IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NATIONAL ASSOCIATION FOR GUN RIGHTS
and FOSTER ALLEN HAINES,

    Plaintiffs,

vs.                                                          No. 1:23-cv-00771-DHU-LF

MICHELLE LUJAN GRISHAM ,
*In her official capacity as the
Governor of the State of New Mexico,*
and PATRICK M. ALLEN, *in his
official capacity as the Secretary of the
New Mexico Department of Health*,

    Defendants.

and

RANDY DONK,
GUN OWNERS OF AMERICA, INC.
GUN OWNERS FOUNDATION,

    Plaintiffs,

vs.                                                          No. 1:23-cv-00772-DHU-LF

MICHELLE LUJAN GRISHAM, *in her
official capacity as the Governor of New Mexico*,
PATRICK M. ALLEN, *in his official capacity as the
Cabinet Secretary of the New Mexico Department of Health*,
JASON R. BOWIE, *in his official capacity as the Cabinet
Secretary of the New Mexico Department of Public Safety*
and TROY W. WEISLER, *in his individual capacity as the
Chief of the New Mexico State Police*,

    Defendants.

and

WE THE PATRIOTS USA, INC., and
DENNIS SMITH,

    Plaintiffs,

vs.                                                                                                                                                             No. 1:23-cv-00773-DHU-LF

MICHELLE LUJAN GRISHAM, *in her
official capacity only*,
PATRICK M. ALLEN, *in his official capacity only,*
JASON R. BOWIE, *in his official capacity only,*
TROY W. WEISLER, *in his individual capacity only,*
and HAROLD MEDINA, *in his official capacity only,*

    Defendants.

and

SHAWN BLAS,

    Plaintiff,

vs.                                                                                                                                                             No. 1:23-cv-00774-DHU-LF

MICHELLE LUJAN GRISHAM, *in her
capacity as the Governor of New Mexico as well as
in her individual capacity,* PATRICK M. ALLEN, *in his capacity as the
Secretary of the New Mexico Department of Health as well as in his
individual capacity,* OFFICE OF THE GOVERNOR
OF NEW MEXICO and NEW MEXICO DEPARTMENT OF
HEALTH,

    Defendants.

and

ZACHARY FORT,
NEW MEXICO SHOOTING
SPORTS ASSOCIATION,

FIREARMS POLICY COALITION, INC.,
and SECOND AMENDMENT FOUNDATION,

    Plaintiffs,

vs.                                                                                                              No. 1:23-cv-00778-DHU-LF

MICHELLE LUJAN GRISHAM, *individually and
in her official capacity as the Governor of New Mexico*,
PATRICK M. ALLEN, *individually and in his official capacity as the
Cabinet Secretary for the New Mexico Department of Health*,
JASON R. BOWIE, *individually and in his official capacity as
the Cabinet Secretary of the New Mexico Department of Public Safety*
and TROY W. WEISLER, *individually and in his official capacity as the
Chief of the New Mexico State Police*,

    Defendants.

## **TEMPORARY RESTRAINING ORDER**

Plaintiffs, individual firearm owners or Second Amendment advocacy organizations (collectively "Plaintiffs"), have moved for a temporary restraining order ("TRO") pursuant to Rule 65(b)(1) of the Federal Rules of Civil Procedure. They seek to enjoin enforcement of the New Mexico Department of Health's "Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures," issued on September 8, 2023 and/or certain portions of Executive Order 2023-130, published on September 7, 2023. The Court held a hearing on the requests for a TRO on September 13, 2023, and heard oral argument from the parties. For the reasons stated below, the Court will grant the Plaintiffs' motions and will issue an Order temporarily enjoining the enforcement of certain provisions of the Public Health Order.

**BACKGROUND**

On September 7, 2023, responding to a rise in mass shootings and gun-related deaths, New Mexico Governor Michelle Lujan Grisham ("the Governor") issued Executive Order 2023-130 ("EO") declaring a state of public health emergency "of unknown duration" due to gun violence. Exec. Order No. 2023-130, (Sept. 07, 2023). The Governor's EO directed the New Mexico State Departments of Public Health, Homeland Security and Emergency Management, and Public Safety to collaborate with the Governor's officer to provide a coordinated response to implement the EO. The following day, on September 8, 2023, New Mexico Department of Health Secretary Patrick M. Allen ("Secretary Allen") issued a "Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures" ("PHO") pursuant to his authority to preserve and promote public health and safety. PHO (N.M. Dep't of Health Sept. 8, 2023).

Among other prohibitions in the PHO, Section (1) restricts open or concealed possession of a firearm by any person, other than by a law enforcement officer or licensed security officer, "within cities or counties averaging 1,000 or more violent crimes per 100,000 residents per year since 2021 according to [the] Federal Bureau of Investigation's Uniform Crime Reporting Program AND more than 90 firearm-related emergency department visits per 100,000 residents from June 2022 to June 2023 according to" the Public Health Department. *Id*. at § 1(A). Section (4) of the PHO further prohibits the possession of a firearm on "state property, public schools, and public parks" unless the person carrying the firearm is a law enforcement officer or licensed security officer. *Id*. at § 4.

The PHO contains certain exceptions on the blanket prohibition of possessing firearms depending on who the person is and where the firearm is possessed.  As noted, Section (1) of the PHO does not apply to "a law enforcement officer or licensed security officer." *Id.* at § 1.  The PHO also exempts possessing a firearm while on private property and firearm possession while at a licensed firearm dealer or gunsmith, possession for use at a licensed firing range or sport shooting competition, or possession of a firearm while traveling to designated locations, provided that the firearm is appropriately locked and secured rendering it inoperable. *See id*. § 1(A)-(E). Willful noncompliance with the PHO subjects "[a]ny person or entity" to "civil administrative penalties available at law." *Id.* at § 4.

Plaintiffs assert that the firearm restrictions in the PHO and Executive Order are clearly unconstitutional in that any such restrictions on their ability to possess firearms, either openly or concealed, violates the Second Amendment to the United States Constitution.  As such, Plaintiffs state that despite the PHO, they intend to continue to carry a firearm, and that doing so would expose them to civil or potential criminal liability. These cases are also brought by several organizational Plaintiffs dedicated to Second Amendment advocacy. Some of these organizational Plaintiffs bring suit on behalf of their members and supporters, alleging that their affected members and supporters each would have standing to sue individually to challenge Defendants' orders; that the interests of the organizational Plaintiffs are germane to their organizational purpose; and that the claims asserted do not require the participation of individual members and supporters in this lawsuit.

Within days of the issuance of the PHO, Plaintiffs moved for a temporary restraining order, seeking to enjoin enforcement of certain provision of the PHO which restricted the possession of firearms.

**DISCUSSION**

To obtain a temporary restraining order, Plaintiffs must show: "(1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits." *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992). "The likelihood-of-success and irreparable-harm factors are 'the most critical' in the analysis." *People's Tr. Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1139 (D.N.M. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

1.   **Plaintiffs Have Established a Likelihood of Success on the Merits**

Plaintiffs have shown a likelihood of success on the merits that their Second and Fourteenth Amendment rights to publicly carry a firearm for self-defense will be violated if the PHO remains in effect. Under the Second Amendment, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. AMEND II. The Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742, 130 S.Ct. 3020 (2010) established that the Second Amendment "protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *McDonald*, 561 U.S. at 780, 130 S.Ct. 3020 (plurality). Additionally, in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, ––– U.S. –––, 142 S. Ct. 2111, 2125, 213 L. Ed. 2d 387 (2022), the Supreme Court explained that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id*. 142 S. Ct. at 2122.

*Bruen* is particularly instructive here as it was a public carry case that involved a challenge to New York State's public-carry licensing regime requiring that an applicant demonstrate "proper cause" for a license to carry a firearm outside his home or place of business for self-defense. *Id.* at 2122. In *Bruen*, the Supreme Court explained that the initial question was "whether the plain text of the Second Amendment protects [the plaintiffs'] proposed course of conduct—carrying handguns publicly for self-defense." *Id.* at 2134. The Supreme Court had "little difficulty" concluding that the plaintiffs' desire to "carry[ ] handguns publicly for self-defense" was covered by the Second Amendment and that the Amendment "presumptively guarantee[d]" the plaintiffs the right to public carry for self-defense. *Id.* at 2134, 2135. Given that presumption, the Supreme Court explained that, in order to justify a restriction on the right to openly carry firearms for self-defense,

> the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nations' historical tradition of firearm regulation. Only if a firearm regulation is consistent with the Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Id.* at 2126 (internal quotation marks and citation omitted). The Supreme Court then examined whether the Nation's historical tradition of firearm regulation would justify a restriction on the public carrying of firearms for self-defense and concluded that it would not. As noted by the Court, "[a]part from a few late-19th-century outlier jurisdictions, American governments simply have not broadly prohibited the public carry of commonly used firearms for personal defense." *Id.* at 2156.

The Court finds that the analysis in *Bruen* will likely control in the instant case, given that here the Plaintiffs challenge a restriction on the right to carry firearms in public for self-defense. Of course, the Court is cognizant of the fact that the instant case may present issues not explicitly raised in *Bruen*, *McDonald* or *Heller*, but given the directives and holdings of this Supreme Court

7

precedent, the Court concludes that Plaintiffs have shown a substantial likelihood of success on the merits of their Second Amendment claim.

### 2. Plaintiffs Will Suffer Irreparable Harm Absent an Injunction

The Court also finds that Plaintiffs have shown they will suffer irreparable harm if a temporary injunction is not issued. "A plaintiff suffers irreparable injury when [a] court [is] unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1263 (10th Cir. 2016) (citation and internal quotation marks omitted). "When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Id.* (citation omitted). The Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (citation omitted). Although "the Supreme Court … ha[s] [not] addressed whether a violation of the Second Amendment 'unquestionably constitutes irreparable injury,'" courts have reasoned that Second Amendment infringements constitute a *per se* injury because "[t]he constitutional right to bear arms in public for self-defense is not a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Wolford v. Lopez*, No. CV 23-00265 LEK-WRP, 2023 WL 5043805, at *30, 31 (D. Haw. Aug. 8, 2023) (quoting *Bruen*, 142 S. Ct. at 2156) (other citation omitted). Like the gun owners in *Wolford*, "Plaintiffs have sufficiently established that the irreparable harm is immediate because they intend to continue to carry their firearms in accordance with their permits in places where carrying firearms are now prohibited." *Id.* at *31. The Court therefore concludes that that Plaintiffs are likely to face irreparable harm of their Second Amendment rights to publicly carry a firearm for self-defense absent an injunction.

### 3. The Temporary Restraining Order Will Not Be Adverse to the Public Interest

Plaintiffs have shown that the Temporary Restraining Order will not be adverse to the public interest. As the Tenth Circuit has stated, "it is always in the public interest to prevent the violation of a party's constitutional rights[.]" *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) (citation omitted). Moreover, a state "does not have an interest in enforcing a law that is likely constitutionally infirm." *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010). Although the State of New Mexico raises important safety concerns, at this stage it fails to demonstrate that the public safety concerns overcome the public's interest in preventing constitutional violations. At a fuller hearing on Plaintiffs' request for a preliminary injunction, the State of New Mexico may present more detailed information about how public safety strongly weighs against issuing a preliminary injunction because of the dangers and safety concerns associated with firearms. However, given *Bruen*'s clarity that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home," *Bruen*, 142 S. Ct. at 2122, the Court concludes that issuing a TRO to prevent the violation of a constitutional right would be in the public interest.

### 4. The Balance of Equities Favor Plaintiffs

The balance of equities weigh in favor of issuing a TRO. As noted "it is always in the public interest to prevent the violation of a party's constitutional rights[.]" *Hobby Lobby*, 723 F.3d at 1145; *see id*. at 1147 (finding that the balance of equities favored First Amendment plaintiffs where they faced "the Hobson's choice between catastrophic fines or violating [their] religious beliefs.") Because the PHO likewise subjects "[a]ny person or entity" to "civil administrative penalties available at law," the Plaintiffs face the choice of either facing fines or violating their

Second Amendment right to carry a firearm in public for self-defense. *Id*. Accordingly, the Plaintiffs have shown that the balance of equities weigh in their favor.

## CONCLUSION

For the reasons explained herein, Plaintiffs' Motions for a Temporary Restraining Order pursuant to Rule 65(b)(1) of the Federal Rules of Civil Procedure is **GRANTED**.

**IT IS THEREFORE ORDERED BY THE COURT** that the Defendants New Mexico Governor Michelle Lujan Grisham, New Mexico Department Secretary Patrick M. Allen, New Mexico Department of Public Safety Jason R. Bowie, Chief of the New Mexico State Police and any other New Mexico officials ("Defendants") are **ENJOINED** from applying, enforcing, or attempting to enforce, either criminally or civilly, Section (1) of the New Mexico Department of Health's "Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures" ("PHO") published on September 8, 2023, which reads:

> (1) No person, other than a law enforcement officer or licensed security officer, shall possess a firearm, as defined in NMSA 1978, Section 30-7-4.1, either openly or concealed, within cities or counties averaging 1,000 or more violent crimes per 100,000 residents per year since 2021 according to Federal Bureau of Investigation's Uniform Crime Reporting Program AND more than 90 firearm-related emergency department visits per 100,000 residents from July 2022 to June 2023 according to the New Mexico Department of Public Health, except:
>
> > A. On private property owned or immediately controlled by the person;
> >
> > B. On private property that is not open to the public with the express permission of the person who owns or immediately controls such property;
> >
> > C. While on the premises of a licensed firearms dealer or gunsmith for the purpose of lawful transfer or repair of a firearm;
> >
> > D. While engaged in the legal use of a firearm at a properly licensed firing range or sport shooting competition venue; or

      E.  While traveling to or from a location listed in Paragraphs (1) through (4) of this section; provided that the firearm is in a locked container or locked with a firearm safety device that renders the firearm inoperable, such as a trigger lock.

*** 

In addition, Defendants are **ENJOINED** from applying, enforcing, or attempting to enforce, either criminally or civilly, Section (4) of the New Mexico Department of Health's "Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures" to the extent it imposes additional restrictions on the carrying or possession of firearms that were not already in place prior to its issuance.

    **IT IS FURTHER ORDERED** that this Temporary Restraining Order shall be effective as of 2:55 P.M. on September 13, 2023 and until such time as the Court has ruled on the Plaintiffs' motions for preliminary injunction, following a hearing at which all parties shall have the opportunity to present further argument to this Court.

    **IT IS FURTHER ORDERED** that in the exercise of its discretion, the Court has considered the issue and determined that a bond, pursuant to Fed. R. Civ. P. 65(c), is unnecessary because "there is an absence of proof showing a likelihood of harm." *Coquina Oil Corp. v. Transwestern Pipeline Co.,* 825 F. 2d 1461 (10th Cir. 1987).

    **IT IS FURTHER ORDERED** that this matter shall be set for hearing on the Plaintiffs' motion for preliminary injunction on **October 3, 2023** at **10:00 A.M.** in the Mimbres Courtroom, United States District Court for the District of New Mexico, Albuquerque, New Mexico.

    **IT IS SO ORDERED**.

 

_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE